UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

TOM GORMAN, an individual,

Plaintiff,

vs.

ROCKY POINTE MARINA PORTLAND, LLC, an Oregon limited liability company, and A&D YACHT SERVICE, LLC, an Oregon limited liability company,

Defendant.

ROCKY POINTE MARINA PORTLAND, LLC, an Oregon limited liability company,

Third-Party Plaintiff,

v.

ANDREW BROWN, an individual,

Third-Party Defendant.

03:11-cv-00413-HU

**OPINION AND ORDER**

Stephen C. Thompson
KIRKLIN THOMPSON & POPE LLP
522 SW Fifth Avenue, Suite 1100
Portland, OR 97204

Attorney for Plaintiff

Thomas E. McDermott
James P. McCurdy
LINDSAY HART NEIL & WEIGLER, LLP
1300 SW Fifth Avenue, Suite 3400
Portland, OR 97201-5640

Attorneys for Defendant Rocky Pointe Marina Portland, LLC

Thomas G. Waller
BAUER MOYNIHAN & JOHNSON LLP
2101 Fourth Avenue, Suite 2400
Seattle, WA 98121-2320

Attorney for Defendant A&D Yacht Service, LLC & Third-Party Defendant Andrew Brown

**HUBEL, J.,**

This case involves a dispute between a shipowner, Tom Gorman ("Gorman"), and two shipyards, Rocky Pointe Marina Portland, LLC ("Rocky Pointe") and A&D Yacht Service, LLC ("A&D") (collectively, "Defendants"), over repairs to a vessel, the DELPHINUS. Gorman's complaint, filed on April 1, 2011, invokes this court's admiralty jurisdiction, 28 U.S.C. § 1333(1), and asserts claims against Defendants for breach of the warranty of workmanlike service and negligence.

Now pending are A&D's motion for partial summary judgment and Gorman's cross-motion for partial summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56(c). A&D and Gorman seek a determination as to the scope of damages, but have reserved the issue of liability for trial.[1] For the reasons set forth below, A&D's motion (Docket No. 40) for partial summary judgment is DENIED and Gorman's cross-motion (Docket No. 45) for partial summary judgment is DENIED.

---

[1] The parties have given full consent to adjudication of the case by a magistrate judge pursuant to 28 U.S.C. § 636(c).

## *I. BACKGROUND*

In June of 2006, Gorman purchased the DELPHINUS, a 1977 Hans Christian 34 Cutter auxiliary cruising sailboat, for $67,000. In September of 2006, Gorman and Rocky Pointe entered into an oral repair agreement whereby Rocky Pointe would make "significant" repairs on the DELPHINUS, such as replacing the decks, salon, wiring and breakers; removing moisture from the deck coring; and installing a new bilge pump.[2] Between September 2006 and April 2008, Rocky Pointe undertook $138,327.02 worth of repairs to the DELPHINUS, which was located at Rocky Pointe Marina for the duration of the repairs.

Upon completion in April 2008, Rocky Pointe delivered the DELPHINUS to Gorman, who transported it to Swantown Marina in Olympia, Washington. Gorman noticed cracking in the fiberglass deck laminate and water entering through the scuppers during the summer of 2008. The cracks in the fiberglass laminate, which was applied to the outer deck of the DELPHINUS as part of the repair work performed by Rocky Pointe, allowed water to penetrate behind the floorboards resulting in premature rotting of the wood.[3]

---

[2] According to A&D's counsel, "[t]here is a dispute as to the nature and scope of the relationship between [Rocky Pointe] and A&D . . . as to which of the defendants contracted with plaintiff. [However,] [t]he dispute is unrelated and immaterial to [A&D]'s motion." (A&D's Mot. Partial Summ. J. at 2.) Based on the record before me, it appears that both A&D Yacht and Rocky Pointe may have provided laborers to repair the DELPHINUS. (*See* Waller Decl. Ex. D at 11) ("We surmise from documents received that A&D Yacht was able to provide one skilled laborer for the duration, with an added helper assigned near the end of the [DELPHINUS] project.")

[3] A&D's counsel cites, among other things, page 13 of Exhibit B to the Declaration of Thomas Waller in support of his claims that: (1) Gorman "made no effort to cover the boat or otherwise protect it from the elements"; (2) when the DELPHINUS was not in

## *II. LEGAL STANDARD*

Summary judgment is appropriate "if pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is not proper if factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v.*

---

use, it "was kept in open moorage (without shelter, tarping, or other covering) at Swantown Marina"; and (3) "constant exposure to the elements," such as mooring the boat without a cover, "exponentially increased the amount of water damage to the DELPHINUS." (A&D's Mot. Partial Summ. J. at 3.) However, Exhibit B is only 5 pages long and makes no mention of Gorman's efforts to keep the DELPHINUS protected from the elements. Perhaps A&D's counsel meant to refer to page 13 of Exhibit D which indicates the DELPHINUS was not covered "[a]t the time of this survey," *i.e.*, October 11, 2011. (Waller Decl. Ex. D at 13.) But even so, Exhibit D does not support the representations made by A&D's counsel regarding the extent to which Gorman does, or does not, cover his boat while it is moored. In fact, in his declaration, Gorman states, "I have always moored the boat with fitted tarps in place since I received it in April 2008." (Gorman Decl. ¶ 7.) On October 11, 2011, "Mr. Wienke and lawyers for defendants came to inspect the boat as part of this litigation. The inspection was scheduled to begin at 10:00 am. Mr. Wieneke and the lawyers were late in arriving by 15 to 20 minutes. By the time of their arrival, I had removed and stored all the tarping." (*Id.* ¶ 8.)

*Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovick v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. The nonmoving party must set forth "specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e). The "mere existence of a scintilla of evidence in support of plaintiff's positions [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

## ***III. DISCUSSION***

I turn now to the only issue raised by Gorman and A&D's motions: Is Gorman's recovery limited to the fair market value of the DELPHINUS at the time of the alleged loss less any residual salvage value?

A&D argues that where, as here, a vessel is considered a constructive total loss -- when the costs of repairing the ship exceeds its fair market value -- damages are measured by the value of the vessel at the time loss minus its salvage value. Based on a June 2006 condition and valuation survey conducted at Gorman's request, A&D asserts that the fair market value of the DELPHINUS at the time of the loss was $68,000, while the current costs estimate to make full repairs to the DELPHINUS "as they relate to damage caused by poor workmanship and related effects" would be $68,600.[4] (Waller Decl. Ex. D at 13.) Because the value of the DELPHINUS is less than the cost of repairs, A&D contends the vessel is a constructive total loss and Gorman's damages should be capped at the value of the DELPHINUS at the time of the loss ($68,000) less any residual salvage value.

In support of its position, A&D relies almost exclusively on *McCutcheon v. Charleston Boatworks, Inc.*, No. 2:07-cv-4079, 2010 WL 2431017 (D.S.C. June 14, 2010). There, a vessel was delivered to defendant's boatyard for the swim platform to be repaired and cleat replaced. *Id.* at *1. Following completion of the repairs, the vessel began taking on water because defendant failed to properly adjust the stuffing boxes and failed to charge the bilge pump batteries before delivering the vessel back to plaintiff's slip. *Id.* In her complaint, plaintiff asserted causes of action for breach of bailment duty and negligence. *Id.* at *4. After the

---

[4] This estimate was provided by Kuhrt Wieneke ("Wieneke"), a marine surveyor who was retained by A&D to board and inspect the DELPHINUS in order to provide an opinion as to the scope of damages.

matter was tried without a jury, the *McCutcheon* court concluded plaintiff was entitled to recover the vessel's pre-loss value ($60,000) minus its post-loss value ($20,000) plus $4,935 for the pumping and towing of the vessel after submersion, for a total of $44,935 in damages. *Id.* at *5. Defendant also asserted counterclaims against plaintiff for its storage of the vessel at its boatyard following submersion ($4,540) and for the costs of post-submersion repairs ($11,300); however, the *McCutcheon* court determined the counterclaims lacked merit because defendant refused to release the vessel based on plaintiff's refusal to pay for defendant's unauthorized post-submersion repairs (i.e., the repairs necessitated by defendant's failure to properly adjust the vessel's stuffing boxes and charge the bilge pump batteries). *Id.*

*McCutcheon* provides little, if any, guidance here. In ascertaining the fair market value of the vessel in *McCutcheon*, the court had the benefit of being provided "listings of similar vessels on the U.S. East Coast market[.]" *McCutcheon*, 2010 WL 2431017, at *3. This record does not have comparable listings. It might be wise to investigate whether any vessels comparable to the DELPHINUS exist in the marketplace. (*See* Mot. Partial Summ. J. Hr'g Tr. 36) (indicating that counsel was not sure whether "such a boat exists.") Additionally, although it appears that the plaintiff in *McCutcheon* paid for the pre-submersion repairs to the vessel, and was spared with respect to post-submersion repairs performed by defendant without her authorization, the *McCutcheon* decision does not address which party would have been required to bear the post-submersion costs if defendant had in fact received authorization from plaintiff. Moreover, the plaintiff in

*McCutcheon* was able to sell her boat for $20,000 (i.e., it had a post-loss value). By contrast, Gorman's counsel claims it may cost his client $30,000 just to dispose of the DELPHINUS "in an environmentally safe manner . . . [because] you can't simply take hulls and leave them on a sand bar anymore." (Hr'g Tr. 36.)

In the alternative, A&D argues that, even if Gorman has alleged a contract claim, "which he did not," he would only be entitled to recover his expectation interest. *See Marine Overseas Servs., Inc. v. Crossocean Shipping Co.*, 791 F.2d 1227, 1234 (5th Cir. 1986) (noting "the basic proposition that the measure of contract damages is based on the injured party's expectation interest." (citing Restatement (Second) of Contracts § 347 (1981))).[5] A&D's counsel claims Gorman's "expectation interest is a 30 year old boat purchased for $67,000 (its FMV) in the condition it would have been had the contract not (allegedly) been breached." (A&D's Mot. Partial Summ. J. at 8.)

Gorman counters by arguing that the caselaw upon which A&D relies -- "collision or mishap" cases where the tort measure of damages is applied when two parties unknown to each other come into contact and one comes away damaged -- is inapposite.[6] Gorman

---

[5] In fact, in his reply memorandum, A&D's counsel go so far as to say that Gorman never pled a breach of contract claim and that the words "breach" and "contract" appear nowhere in the complaint, despite (1) Gorman's complaint bearing the caption "COMPLAINT-CLAIM IN ADMIRALTY FOR BREACH OF THE WARRANTY OF WORKMANLIKE PERFORMANCE. . ."; and (2) A&D's counsel's prior concession that Gorman "appears to allege breach of warranty of workmanlike service." (A&D's Mot. Partial Summ. J. at 6.)

[6] Although Gorman seems to concede that *McCutcheon* is not a collision or mishap case, he nevertheless argues that A&D's counsel reliance on *McCutcheon* is misplaced because the "court actually applied a consequential (i.e contractual) measure of damages."

contends this case involves his claims for breach of Defendants' duties while under contract to effect workmanlike repairs to his boat. As Gorman points out, a shipowner has a maritime cause of action in tort for the negligent performance of a maritime contract or in contract for breach of warranty of workmanlike service. *Alcoa S.S. Co. v. Charles Ferran & Co.*, 383 F.2d 46, 50 (5th Cir. 1967); *see also Midwest Marine, Inc. v. Sturgeon Bay Shipbuilding and Dry Dock Co.*, 247 F. Supp. 283, 284 (E.D. Wisc. 1965) (indicating that an oral contract for repair of a vessel gives rise to an implied warranty of workmanlike service).

With respect to damages based on A&D's alleged breach of its warranty of workmanlike service, Gorman draws the court's attention to *Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401 (5th Cir. 1982). In *Todd*, the Court of Appeals for the Fifth Circuit recognized that

> a shipowner has a maritime cause of action whether he sues in contract for its breach by a person with whom there was a contract for repairs of the vessel, or in tort for the negligent performance of the maritime contract. . . . [The] tort measure of damages is applied in classic cases when two parties unknown to each other come into contact and one comes away damaged, such as collision cases and other maritime torts. [In this case, however, defendant] breached its contract to repair the [vessel's low pressure] turbine and this fact permits the adoption of a different measure of damages. It is too well settled to require citation of authorities that damages awarded for breach of contract should return the party to the position he would have occupied had the contract not been violated. [Plaintiff is] entitled to have the [low pressure] turbine in the condition contracted for, and to recover as well for loss of use of the vessel, out-of-pocket expenses, and (since defendants breached warranties of workmanlike performance) costs and attorneys' fees.

*Todd*, 674 F.2d at 412.

---

(Pl.'s Reply at 3.)

The *Todd* court, according to Gorman, also rejected the very argument that A&D now makes regarding whether Gorman's damages should be limited since the DELPHINUS is allegedly a constructive total loss, stating:

> The defendants next insist that since the cost of repairing the damages caused by the defendants exceeded the market value of the vessel in her condition prior to the casualty, the vessel was a constructive total loss and recoverable damages are limited to the value of the vessel in her damaged condition. . . . Further discussion of the defendants' constructive total loss argument, would serve no useful purpose however, because it ignores the fact that the district court properly applied a contractual rather than a tort measure of damages.

*Id.* at 415. Based on these excerpts from *Todd*, Gorman claims he "can recover the cost of new repairs designed to bring the boat to where she should have been, regardless of their amount relative to the boat's previous fair market value," or, alternatively, if the DELPHINUS "is so far gone that repairs are pointless," then Gorman says he is entitled to "his cost in the now lost boat, plus disgorgement of all sums he paid [D]efendants for the failed repairs." (Pl.'s Opp'n at 9.)

To begin, I note that Gorman's counsel concedes that his cross-motion for summary judgment should be denied. (*See* Hr'g Tr. 44) ("I don't think you can grant my motion, and frankly, I don't think you should.") In any event, it is not seriously disputed whether Gorman, assuming he proves liability, would be entitled to be placed in the position he would have occupied had the alleged breach not occurred. A&D's counsel concedes as much. (*See* A&D's Reply at 3) ("In the event he proves liability, plaintiff would be entitled only to be placed in the position he would [have] occupied had the alleged breach . . . not occurred.")

Questions of fact remain as to the measure of damages. For example, A&D's counsel has put forth evidence suggesting that the current estimate to make full repairs to the DELPHINUS "as they relate to damage caused by poor workmanship and related effects" would be $68,600. By contrast, Pettit Marine LLC's owner, Walter Pettit ("Pettit"), emailed Gorman and his counsel on March 5, 2012, indicating that he reviewed A&D's surveyor's December 2011 repair estimate and made the following determinations: (1) "[i]t is impractical to determine the amount of water damage caused by improper . . . repairs without knowledge of [the] vessel interior condition prior to current water damage"; (2) A&D's estimate is "not conclusive based on estimating water damage . . . [which] can only be estimated by a proper open and inspection"; and (3) repairs could costs anywhere between $138,894 and $166,730. (Waller Decl. Ex. I.) As the marine surveyor retained by A&D admits, it is "not uncommon for shipyard repairs to climb far above initial estimates . . . due to the nature of ship repair in that a large portion of necessary repairs cannot be accurately estimated from surface inspection." (Waller Decl. Ex. D at 11.)

*Cascadia Lumber Co. v. Double T. Indus., Inc.*, 162 F. Supp. 478 (D. Or. 1958), should provide some helpful insight for the parties' trial preparation on the measure of damages. In *Cascadia*, a barge owner sued a repairman for the loss of his barge, which sunk during the course of repairs. *Id.* at 479. One of the "primary questions" presented to this court was: "[W]hat are [the] libelant's damages?" *Id.* at 480. After noting that the measure of damages advocated by the parties were equally absurd, Judge East determined that the measure of damage in a case involving a unique

vessel should be "based upon a logical formula which takes into consideration the fair reasonable cost" of a comparable vessel with comparable characteristics. *Id.* He also found the repairmen liable for the barge owner's claim for salvage service. *Id.* at 481.

In summary, I intend on employing an approach similar to Judge East in *Cascadia*, but there are questions of fact regarding what sum of money would, to the extent possible, put Gorman in as good a position as he would have been in had the contract not been breached. It may well be appropriate to consider the value of a vessel properly repaired by Defendants would have had (if there is any liability for faulty workmanship), or perhaps if there is no "comparable vessel" to consider in that way, the parties may have to focus on the vessel's value before repairs, the money paid for the repairs, and perhaps the fair salvage costs if the vessel is now worthless. The measure of damages will await the evidence at trial.

## ***IV. CONCLUSION***

For the reasons set forth below, A&D's motion (Docket No. 40) for partial summary judgment is DENIED and Gorman's cross-motion (Docket No. 45) for partial summary judgment is **DENIED.**

IT IS SO ORDERED.

Dated this 27th day of June, 2012.

/s/ Dennis J. Hubel

________________________________

Dennis James Hubel
Unites States Magistrate Judge